UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANA HARRIS AND JENNIFER HARRIS, for themselves and on behalf of all others similarly situated

Plaintiffs,

-against-

EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; PENNYMAC LOAN SERVICES, LLC; AND JOHN DOES 1-10,

Defendants.

Index 3:18-cv-17741-MAS-TJB

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs allege:

## NATURE OF THIS ACTION

1. Defendants violated the Fair Credit Reporting Act, 15 USC §§ 1681 et seq. ("FCRA").

## JURISDICTION

2. This Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. All Defendants regularly conduct business in the State of New Jersey.

4. Venue is proper this district under 28 U.S.C. 1391(b).

## PARTIES

5. Plaintiffs **Dana Harris** and **Jennifer Harris** ("Plaintiffs") are natural persons and are "consumers" as defined by 15 U.S.C. § 1681a(c).

6. **Equifax Information Services LLC** ("Equifax") is a limited liability company organized under the laws of Georgia, with a principal place of business in Atlanta, Georgia.

7. **Trans Union, LLC** ("TransUnion") is a limited liability company organized under the laws of Delaware, with a principal place of business in Chicago, Illinois.

8. **Experian Information Solutions, Inc**. ("Experian") is a corporation organized under the laws of Ohio, with its principal place of business in Costa Mesa, California.

9. Equifax, TransUnion, and Experian are each engaged in the business of assembling and disseminating credit reports concerning millions of consumers. Each is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. **PennyMac Loan Services, LLC** ("PennyMac") is a limited liability company organized under the laws of Delaware.

11. John Does 1-10 are entities not presently known to Plaintiffs, but which may become known to Plaintiffs through discovery in this action. John Does 1-10 may include, without limitation, certain direct or indirect affiliates of PennyMac.

## FACTS

12. Plaintiffs are indebted under the terms of a note and mortgage agreement, entered into in or about January 2006, for a residential mortgage loan ("Mortgage Loan").

13. Due to financial hardship, Plaintiffs fell behind on monthly payments for their Mortgage Loan.

14. Pursuant to a modification agreement entered into on or before December 1, 2017, between Plaintiffs and PennyMac for itself or on behalf of the holder of the Mortgage Loan, the terms of the Mortgage Loan were modified ("Modification Agreement").

15. Pursuant to paragraph 3 of the Modification Agreement, the note and mortgage agreement evidencing the Mortgage Loan were, "automatically modified on December 1, 2017."

16. Immediately prior to the effective date of the Modification Agreement, Plaintiffs owed:

| Category | Amount |
|---|---:|
| Principal | $755,845 |
| Delinquent Unpaid Interest | $136,213 |
| Delinquent Escrow shortages | $87,056 |
| Foreclosure Costs | $4,175 |

17. The Modification Agreement created a new principal amount owed under the Mortgage Loan, by capitalizing unpaid delinquent interest, escrow shortages, and foreclosure costs.

18. Paragraph 3.B of the Modification Agreement states, in relevant part: "The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs) … The new principal balance of my Note will be $977,877.86 (the 'New Principal Balance')."

19. The New Principal Balance of $977,877 represents the capitalization, into the principal balance, of the delinquent interest, escrow shortages, and foreclosure costs (less a credit in Plaintiff's favor for $5,412 for certain partial payment(s)).

20. Pursuant to the Modification Agreement, Plaintiffs' interest payments were calculated by reference to the new principal amount (less an allowance for certain deferred principal payments). Absent the Modification Agreement, interest would not have accrued on delinquent interest.

21. Equifax maintains files on both Plaintiffs.

22. PennyMac furnished information to Equifax concerning Plaintiffs' Mortgage Loan.

23. A "tradeline" is a record of an account in a consumer's file maintained by a consumer reporting agency such as Equifax.

24. Equifax has a tradeline for the Mortgage Loan in each of Plaintiff's credit files.

25. The Equifax tradeline for Plaintiffs' Mortgage Loan records that the loan is subject to a modification agreement.

26. The Equifax tradeline for Plaintiffs' Mortgage Loan records a balance of $966,434, but a "High Credit" of $770,456.

27. The Equifax tradeline for Plaintiffs' Mortgage Loan is false. Pursuant to the Modification Agreement, credit was extended to Plaintiffs under the Mortgage Loan in the amount of $977,877. It is false that the "High Credit" for Plaintiff's Mortgage Loan is $770,456, as recorded by Equifax.

28. The false information appearing in the Equifax tradeline for Plaintiffs' Mortgage Loan was furnished to Equifax by PennyMac.

29. The false information appearing in the Equifax tradeline for Plaintiffs' Mortgage Loan reflects poorly on Plaintiffs, and is derogatory to their credit profiles.

30. The Equifax tradeline for Plaintiffs' Mortgage Loan indicates Plaintiffs obtained credit of $770,456, but owe a balance substantially in excess thereof.

31. A tradeline showing a balance in excess of loan principal is harmful to Plaintiffs' credit profiles.

32. Plaintiffs' Equifax Mortgage Loan tradelines shows a "debt to credit ratio" of 125%, reflecting poorly on Plaintiffs' credit profiles. If Equifax accurately recorded Plaintiffs' "high credit" to reflect credit extended under the modification agreement, the debt-to-credit ratio for the Mortgage Loan would improve significantly, and, upon information and belief, Plaintiff's credit profile would improve.

33. Plaintiffs make monthly payments to PennyMac paying down principal on the Mortgage

Loan. However, the tradeline as maintained by Equifax shows no principal paydown on the Mortgage Loan. The reported failure to pay down principal on Plaintiffs' Mortgage Loan reflects poorly on Plaintiffs' credit profile.

34. In December 2018, Plaintiff Dana Harris sought to obtain consumer credit from SunTrust Bank.

35. On or about December 10, 2018, SunTrust Bank obtained a credit report on Plaintiff Dana Harris from Equifax for the purpose of evaluating Plaintiff's application for consumer credit.

36. Based upon the credit report it obtained from Equifax, SunTrust Bank denied Plaintiff's application.

37. SunTrust wrote Plaintiff that a, "key factor" adversely affecting his credit profile was the fact that, according to the information obtained from Equifax, Plaintiff's "[p]roportion of loan balances to loan amounts is too high." Upon information and belief, this is caused, wholly or partly, by the false reporting of "high credit" for the Mortgage Loan.

38. In addition to the credit report shared with SunTrust, Equifax additionally shared credit reports on Plaintiffs with third-parties on or about April 26, 2018, including, upon information and belief, the Mortgage Loan tradeline or information derived therefrom.

39. Plaintiffs disputed the accuracy of the Mortgage Loan tradeline, including the balance thereof, in a written dispute to Experian, Equifax and TransUnion on or about April 10, 2018.

## CLASS ACTION ALLEGATIONS

40. Count I of this action is brought by Plaintiffs Dana Harris and Jennifer Harris for themselves and on behalf of the following class of individuals pursuant to Rule 23 of the

Federal Rules of Civil Procedure:

    a. All consumers in the United States concerning whom Equifax maintains or maintained a file;

    b. Where such file contains or contained a tradeline for a residential home mortgage loan modified under a loan modification agreement with PennyMac Loan Services, LLC;

    c. Where such modification agreement capitalized into a new loan principal balance amounts due consisting of, immediately prior to the modification taking effect, delinquent interest, escrow advances, or other fees and costs;

    d. Where such tradeline maintained by Equifax contained a record that such loan was the subject of such modification agreement;

    e. Where the "High Credit" recorded by Equifax for such loan was lower than the capitalized new balance of such loan under the terms of such modification agreement; and

    f. Where, in the two years prior to the filing of this action, and through the date of class certification, Equifax provided to any third party a consumer report concerning such consumer containing the High Credit information described immediately above, or information derived therefrom.

41. Plaintiffs preserve the right to amend the class definition or to seek certification of alternative classes or sub-classes.

42. Count I meets the requirements of Fed. R. Civ. P. 23 to maintain a class action. Named Plaintiffs are adequate to represent the class alleged herein, and have retained competent counsel to do so.

43. **Numerosity**. Joinder of class claims is impossible or impractical. Upon information and belief, the Mortgage Loan modification agreement executed between Plaintiffs and PennyMac is a standard form contract, and contracts with terms materially identical thereto, insofar as relevant to this action, have been executed between PennyMac and numerous consumers. PennyMac operates on a mass scale, servicing hundreds of thousands of loans in the United States, and furnishes information on all or most of such loans to Equifax. It is highly likely the putative class meets the numerosity requirements for maintaining a class action.

44. **Ascertainable**. The class is ascertainable. Equifax maintains records of consumer reports it prepares on consumers, the purposes and the dates thereof, and maintains records sufficient to establish if such reports included or derived from tradeline information for residential mortgage loans. PennyMac maintains records of information it furnishes to Equifax, and maintains records of all residential mortgage loan modification agreements it enters into and the terms thereof.

45. **Typicality**. Named Plaintiff's claims are typical of those of class members. Plaintiffs' claims and class members' claims are all asserted under 15 USC § 1681e(b), alleging Equifax failed to maintain reasonable processes to assure the maximum accuracy of consumer reports.

46. **Commonality**. Common questions of law and fact arise with respect to all class members, and predominate the class action. These question include whether Equifax maintained reasonable processes to assure the maximum possible accuracy of consumer reports it prepared. Equifax's policies for PennyMac's furnishing "high balance" information were materially uniform across the class. PennyMac's residential mortgage

loan modification agreements are standard form agreements, which share materially identical language.

47. **Superiority**.  A class action is a superior method of adjudicating the claims brought by the class.  Many class members are unaware of the violations of law perpetrated against them, and statutory and actual damages to which class members are entitled are such that retaining counsel and litigating claims individually would prove overly burdensome on parties, counsel and the courts.  Moreover, individual actions litigating the claims alleged herein could lead to inconsistent results.

## COUNT I
## VIOLATIONS OF THE FCRA, 15 USC § 1681e(b)
## CLASS CLAIM AGAINST EQUIFAX

48. All preceding paragraphs are re-alleged.

49. Count I is brought against Equifax by Plaintiffs for themselves and on behalf of the Class defined more fully above.

50. An entity which furnishes tradeline information to Equifax on consumers is commonly known as a "furnisher."

51. Equifax maintains policies and procedures for furnishers, such as PennyMac, to use in providing tradeline information to Equifax concerning modified residential mortgage loans.

52. Upon information and belief, Equifax requires furnishers, including PennyMac, to agree contractually to abide by its policies and procedures for providing tradeline information, including with respect to residential mortgage loans which undergo modification agreements.

53. Upon information and belief, Equifax requires furnishers, in providing tradeline information to Equifax on residential mortgage loans, to indicate whether the loan is subject to a modification agreement.

54. Upon information and belief, Equifax requires furnishers, in providing tradeline information to Equifax on modified residential mortgage loans, to indicate as the "high credit" for such tradeline, the _original_ principal on such loan. Equifax's requirement is inexplicable, and obviously causes false credit reporting on consumers. The "high credit" for a modified loan is not the _original_ principal if the modification to the loan extends a higher level of credit to the consumer.

55. Equifax willfully violated the FCRA, or acted with reckless disregard to the law, in requiring furnishers to provide the original principal as the "high credit" for modified residential mortgage loans.

56. Equifax could easily require that furnishers provide an updated principal balance pursuant to any mortgage loan modification agreement. Equifax failed to do so in this case, and does not do so generally.

57. Mortgage Servicers for Plaintiffs' Mortgage Loan, such as PennyMac, maintain records of the principal balance due on the loan, and could easily provide this information to Equifax.

58. Indeed, Plaintiffs, in April 2018, disputed with Equifax the balance information appearing in the Mortgage Loan tradeline, and submitted to Equifax a monthly bill from PennyMac showing the principal balance substantially higher than the "high credit" for the loan recorded by Equifax. Equifax denied Plaintiffs' dispute.

59. Equifax's policies and procedures are not reasonable, and predictably caused false credit

reporting concerning Plaintiffs and each member of the Class alleged herein.  It should be obvious to Equifax that where, as in the case of Plaintiffs, a loan modification agreement extends credit beyond the original principal balance, the "high credit" should be updated accordingly.

60. Equifax failed to maintain reasonable procedures to assure the maximum possible accuracy of credit reports it prepared on Plaintiffs and class members.

61. Equifax violated section 1681e(b) of the FCRA, for which it is liable.

## COUNT II
## VIOLATIONS OF THE FCRA
## INDIVIDUAL CLAIMS AGAINST EXPERIAN

62. All preceding paragraphs are re-alleged.

63. Count II is brought by Plaintiffs Dana Harris and Jennifer Harris individually, and not on behalf of any class.

64. On or about April 10, 2018, Plaintiffs wrote letters to Experian disputing the balance information contained in the Mortgage Loan tradeline recorded by Experian.

65. On or about November 6, 2018, Experian shared credit reports concerning both Plaintiffs with a third-party, including, upon information and belief, the Mortgage Loan tradeline or information derived therefrom.

66. On or about November 26, 2018, Plaintiffs requested, and obtained from Experian, a copy of their files maintained by Experian.

67. Plaintiffs' November 26 Experian file disclosure records the Mortgage Loan tradeline with a balance of $966,434, but an Original Balance of $770,456.

68. The Mortgage Loan tradeline appearing in Plaintiffs' Experian files is false.  Pursuant to the Modification Agreement, the original balance of the Mortgage Loan was modified to

$977,877.

69. Experian's November 26 disclosure to Plaintiffs fails to note that Plaintiffs dispute the accuracy of the Mortgage Loan tradeline.

70. Experian violated section 1681e(b) of the FCRA by failing to take reasonable steps to assure the accuracy of information in consumer reports it prepared concerning Plaintiffs.

71. Experian violated section 1681i(a) of the FCRA, by failing to reasonably investigate Plaintiffs' dispute to Experian concerning the accuracy of the Mortgage Loan tradeline, including by failing to update the "Original Balance" information in the Mortgage Loan tradeline, and failing to note the consumer disputed the accuracy of the Mortgage Loan tradeline..

72. Experian further violated section 1681(i)(c) of the FCRA by failing to note in Plaintiffs' files that they disputed the accuracy of the Mortgage Loan tradeline.

## COUNT III
## VIOLATIONS OF THE FCRA
## INDIVIDUAL CLAIMS AGAINST TRANSUNION

73. Paragraphs 2-20 above are re-alleged.

74. Count III is brought by Plaintiff Jennifer Harris individually, and not on behalf of any class.

75. Plaintiffs disputed the accuracy of the Mortgage Loan tradeline appearing in their files maintained by TransUnion by letter TransUnion dated April 10, 2018.

76. TransUnion thereafter deleted or suppressed the Mortgage Loan tradeline from Plaintiff Dana Harris's credit file.

77. Upon information and belief, TransUnion, upon investigating the dispute submitted by Plaintiff Dana Harris, determined the information furnished by PennyMac for the

      Mortgage Loan tradeline in Plaintiff Dana Harris's file was not accurate or verifiable.

78. It would have been reasonable for TransUnion to determine that the information PennyMac furnished for the Mortgage Loan tradeline in Plaintiff Jennifer Harris's file was not accurate or verifiable. TransUnion failed to do so.

79. On or about November 26, 2018, Plaintiff Jennifer Harris obtained a copy of her TransUnion file from TransUnion.

80. The Mortgage Loan tradeline contains false information, specifically, "High Balance" of $770,456. The "High Balance" refers to the loan principal or amount borrowed.

81. The balance on the Mortgage Loan is reported as $966,434.

82. The "High Balance" on the Mortgage Loan tradeline should be $977,877, pursuant to the terms of the Modification Agreement.

83. Plaintiff's November 26 TransUnion disclosure fails to note the accuracy of the Mortgage Loan tradeline is disputed by Plaintiff.

84. TransUnion violated section 1681i(a) of the FCRA, by failing to reasonably investigate Plaintiff Jennifer Harris's dispute of April 10, 2018, including, inter alia, by failing to update the "High Balance" information in the Mortgage Loan tradeline, and failing to note the consumer disputed the accuracy of the Mortgage Loan tradeline.

85. TransUnion further violated section 1681i(c) of the FCRA by failing to note Plaintiff disputes the accuracy of the Mortgage Loan tradeline.

## COUNT IV
## VIOLATIONS OF THE FCRA, 15 U.S.C. 1681s-2(b)
## INDIVIDUAL CLAIMS AGAINST PENNYMAC

86. All preceding paragraphs are re-alleged.

87. Count IV is brought by Plaintiffs Dana Harris and Jennifer Harris individually, and not on

behalf of any class.

88. Plaintiffs disputed the accuracy of the Mortgage Loan tradeline in a written dispute to Experian, Equifax and TransUnion on or about April 10, 2018.

89. Upon information and belief, Experian, Equifax, and TransUnion transmitted Plaintiffs' disputes to PennyMac.

90. PennyMac was obligated to conduct a reasonable reinvestigation of Plaintiffs' disputes.

91. Upon information and belief, PennyMac failed to conduct a reasonable reinvestigation of Plaintiffs' disputes.

92. To the contrary, as of November 2018, PennyMac continued to furnish to Experian, Equifax, and TransUnion false information concerning the Mortgage Loan, including specifically the principal amount of the loan.

93. PennyMac failed to report to Experian, Equifax, and TransUnion that Plaintiffs disputed the accuracy of the Mortgage Loan tradeline, itself constituting incomplete and misleading reporting of the account. *Seamans v. Temple Univ.*, 744 F.3d 853, 866-67 (3d Cir. 2014).

94. PennyMac violated section 1681s-2(b) of the FCRA, for which it is liable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment:

*Against Equifax:*

A. An order certifying the class herein alleged under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and undersigned counsel to represent same;

B. Awarding Plaintiffs and class members statutory and punitive damages under the FCRA;

C. The creation of a common fund for all lawful purposes associated with the relief and

remedies sought herein;

*And against All Defendants:*

D.  A declaration that Defendants' conduct alleged herein is unlawful and equitable relief sufficient to remedy the same;

E.  Awarding Plaintiffs statutory and actual damages;

F.  Costs of this action and reasonable attorneys' fees and expenses;

G.  Interest as allowed by law; and

H.  All such other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury.

Dated: March 7, 2019
       New York, New York

**POSNER LAW PLLC**

<u>s/ Gabriel Posner, Esq.</u>
NJ Bar ID 137312015
270 Madison Avenue, Suite 1203
New York, New York 10016
Phone: (646) 546-5022
Email: gabe@PosnerLawPLLC.com
*Counsel for Plaintiff*

## **LOCAL RULE 11.2 CERTIFICATION**

  I, Gabriel Posner, Esq. hereby certify to my own knowledge and based upon information available to me at my office, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

Dated: March 7, 2019

                        *s/ Gabriel Posner, Esq.*